## Bly *versus* Second National Bank of Titusville.

79 453
126 423

1. In a suit by a national bank against an endorser on a note discounted for the drawer, the affidavit of defence averred that defendant was an accommodation endorser, that part of the consideration was a balance for which the drawer had become liable as accommodation endorser for another, who had borrowed of the ·bank in excess of ten per cent. of its capital. *Held* not a defence. Per TRUNKEY, P. J., adopted by the Supreme Court.

2. The affidavit also averred, that the note was given (except as above) for renewals and settlement of loans by the bank to the drawer, of which note the drawer of the note in the suit was accommodation endorser ; that during all the time of the renewals, the bank had taken, &c., usurious interest. *Held* to be no defence against the amount of usury, except that part on the note in suit. *Id.*

3. Courts will not aid one whose cause of action is founded on an immoral or illegal contract. *Id.*

4. This rule should not be extended so as to encourage violations of contracts for payment of honest debts, as between the parties, because growing out of tainted originals. *Id.* ·

5. The drawer of the note in suit being an endorser and not having borrowed the money nor paid· any interest, had no cause of action on account of the payment of illegal interest. *Id.*

6. The right of action for the usury was in the drawer of the original note. *Id.*

7. O'Hara *v.* Second National Bank, 27 P. F. Smith 96, recognised.

November 22d 1875., :Before SHARSWOOD, MERCUR, GORDON, PAXSON, and WOODWARD, JJ.

Error to the Court of Common Pleas of *Venango county :* Of October and November Term 1874, No. 266.

[Bly *v.* Second National Bank of Titusville.]

This was an action of assumpsit, brought May 22d 1874, by the Second National Bank of Titusville against Charles M. Bly, as endorser of the following note, of which the plaintiff was the holder :—

"$2424.37.

Titusville, December 26th 1873. ˙

Four months after date, I promise to pay to Charles M. Bly, or order, $2424.37, at Second National Bank, Titusville, value received.                                           F. W. ANDREWS."

Endorsed " CHARLES M. BLY."

The defendant's affidavit of defence was as follows :—

Frank E. Hickox, being duly sworn, says :—" That he resides in the city of Titusville, in said county, and is and has been for four years the cashier and book-keeper of Frank W. Andrews, the maker of the note sued upon herein, upon which the above-named defendant is merely an accommodation endorser, without value or consideration ; * * * that the note herein set up and sued upon was given by said Andrews to said plaintiff in consideration, in part, to wit : in the sum of $1100, to secure that sum, being the balance of so much which said Andrews had become liable to pay said plaintiff by reason of accommodation endorsement, without value or consideration, by him theretofore made on the promissory notes of one Paul W. Garfield, which said Garfield procured to be discounted, and obtained loans of money upon, by and from said plaintiff; that the actual existing liability of said Garfield to said plaintiff for money borrowed, at the time of said Andrews' endorsement as aforesaid of his said notes, was about the sum of $60,000; that the amount of the capital stock of said plaintiff actually paid in at such time was only $300,000; that, in and by the laws of the United States, under which said plaintiff is organized and incorporated, the said plaintiff was forbidden to loan said Garfield any sum in excess of one-tenth part of its capital stock actually paid in at that time, to wit: the sum of $30,000, and that said $1100, being part of such sum in excess as aforesaid of such $30,000, was so loaned as aforesaid to said Garfield in violation of and contrary to law, and the loan thereof void.

" And deponent further says that the note in suit (except the said $1100 loaned as aforesaid to said Garfield) was given to said plaintiff for and in renewal, continuance, and settlement of loans and discounts made by plaintiff to and for the Climax Mower and Reaper Company, of Corry, Pa., upon which said Andrews was an accommodation endorser, without value or consideration, upon notes and renewals from time to time, given by said company, and endorsed by said Andrews to said plaintiff, beginning with the 9th day of May 1871, and ending on the day of the date of the note in suit, as specified in schedule hereto annexed ; that, during the whole of such period, the rate of interest limited by and under the

laws of Pennsylvania for the loan and forbearance of money was six per cent; that, in and by the laws of the United States, under which said plaintiff is organized and incorporated, said plaintiff was and is forbidden to take, reserve, charge or receive, a greater rate of interest than six per cent. upon the loans and discounts aforesaid; that, during the whole of such period, said plaintiff took, reserved, charged and received, upon and out of the loans and discounts aforesaid, a rate of interest at ten and twelve per cent., as specified in said schedule, amounting in the aggregate to the sum $1475.02, and has by the laws aforesaid forfeited such sum to said Andrews, and said defendant is entitled to and has a legal set-off to that amount as against said plaintiff's claim herein."

The schedule referred to in the affidavit of defence showed a number of loans at usurious rates of interest as there set out. The interest charged on the note in suit was $82.42 and was usurious.

On a rule to show cause why judgment should not be entered for want of a sufficient affidavit of defence, the court, Trunkey, P. J., delivered the following opinion:—

" This action is against the endorser, who was payee of a promissory note, dated December 26th 1873, for $2424.37, drawn by F. W. Andrews. The affidavit of defence avers that Charles M. Bly was an accommodation endorser, and that the note was given by Andrews to the plaintiff on illegal consideration as to part, and is subject to set-off as to the balance.

" 1. The consideration to the extent of $1100 was a balance which Andrews had become liable to pay the plaintiff, by reason of accommodation endorsements theretofore made, on the promissory notes of one Paul W. Garfield, which said Garfield procured to be discounted and obtained loans of money upon from the plaintiff. At the time of Andrews's endorsements of said notes, the liability of Garfield to the plaintiff for money borrowed was about the sum of $60,000. The amount of plaintiffs' capital stock paid in was only $300,000. The said loan by the plaintiff to said Garfield, being in excess of one-tenth part of the capital stock of the plaintiff, was in violation of law and the contract of loan void. Thus alleges the affidavit.

" The 29th section of the Act of Congress of June 3d 1864, commonly called the National Bank Act, provides that: ' The total liabilities to any association, of any person, or of any company, corporation or firm, for money borrowed ' * * * * ' shall at no time exceed one-tenth part of the amount of the capital stock of such association actually paid in.' Let it be conceded that the loan by the plaintiff to Garfield was in violation of law, and for this reason was within the well-settled rule, that no action can be maintained on a contract, the consideration of which is either wicked in itself or prohibited by law. Although the borrower was a party to the violation of the law and had the lender's money in

his pocket, he could have defended against its payment, because the law will not enforce an act which it has prohibited. The only reason for the rule is for the public good. No court will aid a man who founds his cause of action on an illegal act, for he has no right to be assisted when, from his own stating or otherwise, the cause of action appears to arise on an immoral or illegal contract. Surely the defence is not upon any merit of the borrower. It was said by Lord Mansfield : ' The objection that a contract is immoral or illegal as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed ; but it is founded in general principles of policy, of which the defendant has the advantage, contrary to real justice as between him and the plaintiff, by accident, if I may so say.'

" How far the principle is to affect subsequent or collateral contracts, the direct or immediate consideration of which was not inducive to the original illegal act, is an intricate question. It was long ago decided in England, and has often been repeated by our own courts, that ' the test, whether a demand connected with an illegal transaction is capable of being enforced at law, is whether the plaintiff requires any aid from the illegal transaction to establish his case.' In Thomas *v.* Brady, 10 Barr 164, after referring to the test, Rogers, J., approvingly quotes from Story on Contracts : ' If an act in violation of either statute or common law be already committed and a subsequent agreement entered into, which, though founded thereupon, constituted no part of the original inducement or consideration, such an agreement is valid.' The rule has sometimes been carried to inconvenient lengths, not because of its unsoundness in itself, but in its application to particular cases. It should be rigorously applied to all unlawful transactions; but not extended so far as to encourage violations of contracts for payment of honest debts, as between the parties, because they grow out of tainted originals. If the taint of the original vitiated every contract growing out of it, however remotely connected with it, it would give protection to fraud upon individuals without compensation in the benefit of the public.

" How much was the total amount of Andrews's endorsement for Garfield does not appear, nor do the inducements which made him directly assume payment of the balance as his own debt. It is certain that Garfield's notes, endorsed by Andrews, were arranged in some way, and that the latter gave his own obligation with security for the balance. The plaintiff needs no aid from the original transaction to make out his case. Garfield is no party to the note. The defendant attempts its defeat, not by showing anything done at the time it was given, but because of the turpitude of the borrower and lender when Garfield borrowed money of the bank in excess of the amount the latter was permitted to loan to one

[Bly *v.* Second National Bank of Titusville.]

person. The violation of the statute was before Andrews settled and gave the note upon which this action is founded.

" The ruling in Fowler *v.* Scully, 22 P. F. Smith 456, holding a mortgage void when given to secure future loans, because of violation of the 28th section of the National Bank Act, impelled me to apply the like principle to a violation of the 29th section in an action brought upon the note given by the borrower for the money loaned. Perhaps, as contended on one part, the principle does not apply to both sections, but I have been unable to draw a distinction. I am not prepared to go further than I understand the authority of the decision in Fowler *v.* Scully, and, until better advised, cannot apply the rule to the case of one who, after the loan, upon some new and undisclosed arrangement, voluntarily gave another security.

2. " The defence made to the other portion of the note is, that it was given in renewal, continuance and settlement of loans and discounts made by the plaintiff to the Climax Mower and Reaper Company, for which Andrews was an accommodation endorser, upon the notes and renewals given from time to time by said company, beginning on the 9th day of May 1871, and ending December 20th 1872 ; that during said time lawful interest in Pennsylvania was 6 per cent. ; that the plaintiff took, renewed, charged and received upon and out of the said loans and discounts a rate of interest at 10 and 12 per centum, as specified in a schedule, amounting in the aggregate to $1475.02, and has by law forfeited such sum to said Andrews, who has a legal set-off to that amount.

" On all the loans and discounts Andrews was an accommodation endorser. He borrowed no money, paid no interest, and has no right of action on account of illegal interest paid by the company. The affidavit and schedule show that the company at divers times borrowed a large amount of money from the plaintiff, all of which has been paid except $1324.37, the amount of the note in suit, after deducting $1100,—which sum grew out of Garfield's business. By some arrangement this comparatively small sum then still owing by the company, was included in Andrews's note endorsed by Bly. The affidavit avers that the company paid the interest. Not half the interest was paid within the last two years, the time limited within which to commence an action to recover it back. The 30th section of the National Bank Act provides that when illegal interest is knowingly reserved or charged, or agreed to be paid, it shall be held and adjudged a forfeiture of the entire interest which the note or evidence of debt carries with it. When it has been paid, the person paying the same, or his legal representative, may recover back, in action of debt, twice the amount of the interest thus paid, from the association taking or receiving the same.

"The right of action for the usurious interest paid is in the

Climax Mower and Reaper Company. That company may yet bring suit, if they have not settled the claim. Nothing appears to show why any portion of the interest should be set off in favor of Andrews, except by a liberal construction of the affidavit, the sum of $82.42 be defalked as forfeiture, by reason of its having been charged at the rate of 10 per centum on the note in suit.

" The affidavit shows that Andrews became indebted to the plaintiff on endorsements for Garfield, and for the Climax Mower and Reaper Company, and settled the same by giving his note, endorsed by Bly, at four months, to the plaintiff. For the reasons given, I am of the opinion it fails to disclose a good defence."

The court made the following order :—

"And now, July 3d 1874, upon the plaintiff giving credit for $82.42, the amount of interest alleged to have been charged on the note, rule made absolute as to balance of claim."

The defendant took a writ of error, and assigned errors as follows :—

1. Refusing to deduct from plaintiffs' claim the sum of $1148.53, being that part of the note which Andrews assumed by reason of his accommodation endorsements for Garfield, to whom plaintiffs' loan was illegal.

2. Refusing to deduct from plaintiffs' claim the sum of $1475.02, being the amount of all the interest reserved and charged by the plaintiff in the whole series of discounts, as shown by the schedule attached to the affidavit of defence, the same being in every instance illegal and forfeit.

3. Granting judgment in favor of the plaintiff, the affidavit containing a full and complete defence to the whole claim.

*Guthrie & Byles,* for plaintiff in error.—The loan being prohibited was void, and the illegality could not be waived : Maybin *v.* Coulon, 4 Yeates 24 ; Bartlett *v.* Vinor, Carthew 252 ; Cope *v.* Rowlands, 2 M. & W. 149 ; Fowler *v.* Scully, 22 P. F. Smith 456 ; Coppell *v.* Hall, 7 Wallace 558 ; Bank of Pennsylvania's Estate, 10 P. F. Smith 471 ; Holt *v.* Green, 23 Id. 198 ; Mitchell *v.* Smith, 4 Dallas 269 ; Freeman *v.* Smith, 6 Casey 264 ; Fisher *v.* Bridges, 3 El. & B. 642. A subsequent contract which carries into effect an illegal contract, is itself illegal : Adams *v.* Rowan, 3 Sm. & M. 624 ; Coulter *v.* Robertson, 14 Id. 18 ; Smith *v.* Barstow, 2 Doug. 155 ; Gray *v.* Hook, 4 Comstock 449. If one part of a contract be void the whole is void : Crawford *v.* Morrell, 8 Johns. 253 ; Saratoga Bank *v.* King, 44 New York 87 ; Filson *v.* Himes, 5 Barr 452. The whole amount of interest was illegal. Under the Act of Congress of June 3d 1864, the taking of usurious interest by a national bank works a forfeiture of the whole interest : Lucas *v.* Government National Bank, 28 P. F. Smith 228 ; Brown *v.* Second National Bank of Erie, 22 Id. 209.

[Bly v. Second National Bank of Titusville.]

*R. Sherman*, and *M. C. Beebe*, for defendant in error.—The inducements to Andrews to assume this debt do not appear in the affidavit: Swan *v.* Scott, 11 S. & R. 155. If an act in violation of law has been committed, a subsequent agreement entered into, which, though founded upon it, constituted no part of the original inducement, is valid: Thomas *v.* Brady, 10 Barr 164; 2 Kent's Comm. 597, 601; Armstrong *v.* Toler, 11 Wheaton 258; Broom's Maxins 547. As to the usury : Brown *v.* Second National Bank of Erie, *supra ;* First National Bank of Mt. Joy *v.* Gish, 22 P. F. Smith 13.

Judgment was entered in the Supreme Court November 26th 1875,

PER CURIAM.—The able opinion of the learned president of the court below upon the motion for judgment for want of a sufficient affidavit of defence, renders any discussion by us unnecessary. We affirm this judgment on that opinion. It may be added that as to the point of the illegality of the loan on the ground that the bank had violated its charter by loans to Garfield of more than ten per cent. of its entire capital, the recent case of O'Hare *v.* The Second National Bank—not yet reported—but which will be in 27 P. F. Smith 96, fully sustains the judgment below.

Judgment affirmed.